The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Go ahead, Counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Philip C. Thoran and I'm arguing on behalf of Appellant Google LLC. I plan to focus my argument on Claims 86 and 112, the only claims the Board did not cancel as unpatentable across Google's two IPR proceedings. Of course, is there any other issues? Yes, Your Honor. Mr. Citrin, this is Jed Wallach. In the red brief at 59, Blackberry argues that Google waived the PTAB's obviousness determination regarding Claim 112 because they say it wasn't raised below. Assuming we affirm the PTAB's claim construction, do you agree that you waived the PTAB's obviousness determination? And if not, where did you raise it below? Thank you, Your Honor. We don't believe that we waived any arguments before the Board regarding the obviousness determination. I'm pulling the citation for you. Your Honor, at Appendix Site 168-170, Petitioner analyzes the combination of the two primary references with Gong. And in those combinations with Gong, which describes a security policy and permission framework that are configurable, those configurable policy permissions allow the user to configure the security system however they choose. So the issues were addressed in that particular portion of the brief. And that was the petition for 1619. Let me give you the Appendix Site for 1620 as well. That's Appendix Site 951 to 954. Hello, this is Judge Chen talking here. Before we go any further, we're talking about a waiver argument for Claim 112. Just so I'm following, are we talking about the alleged waiver that you in your petition never alleged that Gong teaches access to non-commercial services? Non-sensitive APIs upon verification of the digital signature? That's my understanding of the question, Your Honor. Okay. And just to be clear, this is under the Board's construction, which requires that the access to the non-sensitive API is only allowed if the digital signature is verified. Right. Okay. I'm glad I'm on board with this. So assume for the moment that I read your petition and your reply as being focused solely on a particular understanding of the word upon, and you did not rely on Gong for teaching, even under the Board's construction, the notion of access to non-sensitive APIs upon verifying the digital signature. So if you could point me to a sentence in your petition that proves that wrong, then that would be great. Sure, Your Honor. So, Your Honor, if you look at Appendix 169 over to 170, and in particular Appendix 170, the last paragraph, to the extent Patent Owner argues where the Board finds that GARS does not disclose the features of Claims 112-139, it would have been obvious to a person with a skill in the art to modify the device process of the GARS-Gong combination such that when the application is executed upon verifying the digital signature, the device allows the application to access non-sensitive APIs stored in the device, similar as described in Gong. Right. So my problem is when you go back to page A-169, there's a sentence getting close to the bottom of that page that begins with, for example, and it reads, quote, for example, Gong describes implementing the Java security model such that any application, regardless of whether the application has a verified digital signature, can access some resources, non-sensitive resources, while only applications having a verified digital signature can only access additional resources, sensitive resources, end quote. To me, that reads pretty clearly that your side took the position that Gong does not require digital signature verification when it comes to accessing non-sensitive APIs, and so that was your understanding of Gong. That's what you advanced, and now to suggest that this page said something the opposite of that, I just don't follow. Sure, Your Honor, and just to go back to that sentence at appendix 169, it is an example of what Gong describes, and here the example we're talking about is the fact that you can have a digital signature that is successfully verified, which upon occurrence of that verification, you can access the non-sensitive API, and also the scenario where the digital signature is not successfully verified, you're also given access to that non-sensitive API, but that disclosure in Gong is only an example. Again, it provides... I'm sorry, I got lost there. Just so I'm... I didn't quite follow what you said. Just to repeat, my understanding of this sentence is you can get access in Gong to non-sensitive APIs without any verification of a digital signature. Are you saying that this sentence reads as something else? No, Your Honor, that's absolutely true. Gong provides a... Yes, Your Honor, that's correct. That's the understanding of this sentence and what it's describing with respect to Gong. Counsel, this is Judge Wallach again. Do you concede that if we determine the PTAB properly construed the signed software application term in Claims 1 and 76, that GARS discloses that term? If the board concedes that signed software application... Can you repeat the question, please, Your Honor? If we determine that the PTAB properly construed signed software application, do you concede that GARS discloses the term? Yes, Your Honor. If signed software application was properly construed in the 1619 proceeding, which involves GARS, then yes, we concede that GARS discloses that limitation. Yes, Your Honor. Go ahead. And if I can go back to Claim 112 for a moment. I'd like to address the construction of a pawn that was applied by the board and adopted by the board. Just so I'm clear, if I don't agree with you that you preserved anything with respect to Claim 112 that's premised on GARS teaching this claim limitation under the board's construction, then for purposes of this appeal as to Claim 112, your only argument left is arguing about the meaning of the claim term upon verifying, right? Yes, Your Honor. I believe that's correct. Okay. Go ahead. So the board's construction, if I may, they admit at Appendix 36 and 86 that their construction lacks support in the specification. That's because the specification does not include an embodiment in which the verification of one signature allows access to both sensitive and non-sensitive APIs. Well, my understanding is they relied on a plain meaning understanding upon verifying, right? That's correct, Your Honor. That does appear to be what the board relied on. So what's wrong with that? It's inconsistent with the record. It's inconsistent with the 868 patent. There's no support for it. It's also inconsistent with the board's own understanding of what the terms sensitive API and non-sensitive API mean. They construed those two terms. Sensitive API, the board construed to mean an API to which access is restricted. And they construed non-sensitive API to mean an API to which access is not restricted. And neither party disputes those constructions on appeal. And those constructions make sense when you look at the claim language and also the specification. If you go to the specification as an example, Appendix 104, and this is Column 9, Line 27 to 31, states that the software application without a proper digital signature may be denied access to the API library exposing the sensitive API, but executed to the extent possible without access to the API library. As one more example, Claim 141 explicitly states that the application is given access to a non-sensitive API, but not a sensitive API if the digital signature is not successfully verified. So the 868 patent... Under your rebuttal time, counsel. Thank you, Your Honor. I'm just going to conclude on this one point. So consistent with the rest of the 868 patent, a pawn in Claim 112 should not be read to mean that the application can access the non-sensitive API only if the digital signature is successfully verified. There's simply no support for such a narrow construction in the specification or the claims, especially under the BRI standard. Thank you. Ms. Fukuda? Yes, good morning, Your Honor. Changli Fukuda for Appellate Blackberry. May it please the Court. And, Your Honor, just to address the point and the questions raised about Claim 112, you are... Counsel? Yes. Counsel, remember what I said. Listen for the Court. Okay? You're reserving three minutes, right? That's correct. Clerk, please start your time over again. You can go ahead. Okay. Your Honor, with respect to Claim 112 that was addressed in the opening argument by Google, you had asked a question whether the Court had found the meaning of a pawn verifying based on its plain meaning. And the answer is, Your Honor, and to the extent that Google is arguing that there are some inconsistencies that the Board had found with the specification, that would be harmless error. The conclusion that the Board had reached is still correct. In fact, the written description provides that there can be a global signature that, when verified, gives access to all signatures, all APIs. That includes sensitive and non-sensitive APIs. So, to that extent, the Board's construction is consistent, not just with the plain meaning, but also with the specification. And, Your Honor, if I may address the abridged version construction of the software application... Ms. Bakuda, before you leave Claim 112, I can't recall. There's so much going on in this case, as well as the other cases today. Is this the issue where the Board suggested that Claim 112 is not directed to that global signature embodiment in the specification? This is the one, partially, Your Honor. So, the Board had said that, properly construed for a pawn verifying, Claim 112 is directed to a multi-signature embodiment, for which there would be two signatures. Isn't that the global signature embodiment? I think implicit in that is that Claim 112 actually requires... I think what the Board had said was that there is no disclosure in the written description of a one-signature access to non-sensitive APIs. And that's the part that the written description does disclose, which is in Appendix 101, Column 4, Lines 1 to 12, is the disclosure that says, quote, All APIs are restricted and locked until a global signature is verified for a software application, unquote. So, the only issue here is that... I'm just asking for your help to understand what was the Board's view of this claim, vis-à-vis the specification. I thought the Board had said something about how it did not believe, in its view, that the specification has support for Claim 112, at least how it understood Claim 112. Am I wrong about that? No, you're not wrong about that. But the specification does provide support to... Okay, so this is an issue you're, in part, disagreeing with the Board. Yes, yes. With the rationale, Your Honor, yes. But it was, as we had stated in our brief, this was harmless error, because the Board's construction, based on that plain meaning of upon verifying, is still correct. And on top of that, the written description does support the correct interpretation. Okay. Okay, Counsel, this is Judge Wallach. With respect to cross-appeal, it seems like both your obviousness and anticipation arguments hinge on whether Lynn discloses a determination that the signature exists. Is that correct? With respect to Lynn, that is correct. It depends on the specific issue. Our view is that there is no disclosure in Lynn of whether a signature exists, because a signature always exists in Lynn. Counsel, the PTAB took the position that even if there wasn't an explicit determination that the signature exists, Lynn implicitly requires such a determination be made, since it first requires a signature in order for the verification process to occur. If there's no signature, there can't be any verification. And the PTAB relies on the intrinsic record and expert testimony to reach its conclusion. How is that determination not supported by substantial evidence? Your Honor, there is disclosure in Lynn of verification process, but there is no express or inherent disclosure that the verification is of the developer's signature. So, the PTAB cannot fill in that missing limitation, either through its assumptions or suggestions, nor through expert testimony. So, for example, Your Honor, in Appendix 34- Is there any expert testimony in the record that supports your position? The expert testimony that supports the position is that there is no express or inherent disclosure by Lynn, and which Blackberry expert, Dr. Ligler, has put forward. Counsel, where is that in the record? Your Honor, if you could just give me one moment, I will find that. Your Honor, if I may, can I give you that exact site during my rebuttal time? Sure. I just need a minute to dig up those pages. Okay, thank you. So, the point here is that Lynn discloses itself that the access to the sensitive APIs is based on three conditions, and there is verification going on, but none of them relates to verifying the digital signature itself. One condition is to verify the certificate. Second condition is to authenticate the timestamp. And the third condition is confirming the hash of the received software application against file hash 304 in the signed ADS. None of these conditions require verifying the developer's signature, and that particular passage is on Appendix 34-86, Column 5, Lines 6-30. So, in fact, the Board's conclusion is that there is disclosure of verifying digital signature because it saw no other purpose for Lynn's digital signature. Again, that is not the case of an express disclosure. In fact, it's an admission that there is no express disclosure, and it's also not inherent because it is not necessarily so. This is where the Board basically credited Google's experts' explanation of how Lynn operates. Is that right? That is correct, Your Honor. And just to follow up on Judge Wallach's question, or one of his questions, did your side, did BlackBerry's expert come back and try to explain why Google's experts' understanding of Lynn is incorrect? Yes, Your Honor. In fact, if you take a look at Appendix 65-12 through 65-22, that is BlackBerry's expert. Do you have a particular paragraph, and maybe even better, a particular sentence that joins the debate on countering Google's experts' position on how Lynn operates? I mean, if you want to wait until the next round that you're up, that's fine. Yes, there are several paragraphs here, and I'm happy to highlight a sentence for you and more precisely pinpoint to that, but if you take a look at paragraphs 64 through 66, I know those are fairly lengthy paragraphs, but it does, what I had argued is summarized, basically summarizes the expert opinion here. I understand that, but it's critical for these purposes to know exactly what you're targeting. Right. Can I just, can I, well then, unless you have a particular sentence ready, I've got another question as to Claims 1 and 76 as to, there's two proceedings here. If we agree with the Board's construction of signed software applications, then when it comes to the 1619 proceeding that relies on Garst and Gong, you, your position is that we can affirm the Board's unpatentability finding as to Garst and Gong because the signed software application construction dispute was the only dispute you have on appeal. Is that right? I did not see, I didn't see an argument in your blue brief that disputed whether Garst teaches that claim limitation as construed by the Board if we were to agree with the Board's interpretation. Am I wrong about that? I believe we did put forward an argument, Your Honor, and I'll get to the site in a bit, that Google's proposed construction for signed software applications is a, I'm sorry. Right. You disagree with that construction that the Board adopted. I'm saying assume for the moment we agree with that construction. Then as to the 1619 proceeding, which found the claims 1 and 76 unpatentable in view of Garst and Gong, do you have an additional argument? Counsel, this is Judge Stoll. I'm just adding on here, actually. I thought that you agreed to Judge Chen's question at pages 46 through 47 of the yellow brief. Am I wrong about that? Okay. Yes, Your Honor. Thank you for pointing that out. Yes, yes. Our contention on appeal is based on the correct interpretation or the erroneous interpretation of the signed software application term. So then let's just assume for the moment we agree with signed software application, the construction of that. Does it matter whether we need to confront the question of whether there's substantial evidence as to Lynn disclosing the signed software application limitation and anything else in claims 1 and 76, given that we're going to affirm the unpatentability decision in the 1619? Are there other claims that are somehow in the mix that I'm not aware of? Or is it a true, complete overlap? As to those claims 1 and 76, it would be an overlap in terms of the rationale, yes, Your Honor. Again, just so you know, you're under your rebuttal time. All right. Unless there are other questions, I'd like to reserve my time for rebuttal. Go ahead. Proceed. Hello, Your Honors. This is Phillip. I wanted to address one quick point in reply and then turn to BlackBerry's cross-appeal. Ms. Zakuda raised the issue of the global signature with respect to 112 and BlackBerry's argument that the global signature supports the board's construction. The board properly rejected that argument for two reasons. First, when claim 112 was added during prosecution, the applicant did not cite or refer to the global signature embodiment at all. It instead referred to the embodiments describing API-specific signatures, as can be seen at Appendix Site 2036. Second, as the board explained at Appendix 19-20 and 35-36, claim 76 allows access to an individual sensitive API out of a plurality of APIs. The global signature that's described in the specification doesn't allow access to an individual sensitive API in that way. It instead describes a multiple signature scenario. Yes. I'm sorry. I thought I heard a question. The multiple signature scenario for the global signature requires a first global signature that's required to provide device-level access, and then a second API-specific signature is required to provide API-level access. We don't believe that the global signature supports the board's construction, which is the same conclusion that the board reached. There's nothing in the specification or claims that supports the board's conclusion here. The only construction that's supported by the specification is Google's, which requires the non-sensitive API not be access-restricted. Mr. Citron, this is Judge Chen. The difficulty I'm having is my understanding of the word upon and the dictionary definition of the word upon. To me, upon is communicating the thought that only when a certain event occurs will another event occur. That's how I understand upon. If you can use the word upon in a sentence where that's not the case, it would help me understand why your looser understanding of upon is plausible. Sure, Your Honor. I certainly agree that the term upon in some circumstances can have that meaning. I'm telling you, I think it's always. I'm looking for a different circumstance where it's not. Sure. To give an example, if you file a patent application upon there being a full moon, that doesn't mean that you can't file a patent application at some other time. That's really the dispute here. If the sentence said upon the occurrence of a full moon filing a patent application, you would say what? That means that the patent application could be filed after the full moon, or when there's a full moon. But the point is, even if there's not a full moon, you can still file a patent application. That word upon doesn't mean that that is the only scenario where you are able to file a patent application. How does it not mean that? Go ahead, Judge Wallach. How does it not mean that? Upon, if you look at the dictionary definition, and I'm not sure if there's actually one in the record, unfortunately, but upon can also just mean a sequence. It occurs after something. And when you look at the context of the patent, that's certainly the case here. When you look at the claims, it uses based upon when describing access to the sensitive API, it says that the sensitive API is restricted. When you reach claim one... Excuse me, this is Judge Stoll. I think the problem with your argument is that maybe you're right that when upon is used in a different context, it could mean something different. But the problem is the setup of the sentence, which is upon verifying the digital signature, something happens. Upon a full moon occurring, something happens. It would suggest that the thing that follows upon has to happen before the action can take place. Why is that not... You can answer the question, counsel. Sure. So, upon here does mean it takes place after, but I think it doesn't say only upon. That's the missing term that would require that narrow reconstruction. And just to bring it back to the patent, if we interpret upon to have that narrow construction, then it's inconsistent with everything that's in the specification. The non-sensitive API has now gone from being a unrestricted API that can be accessed regardless of whether you have a verified or unverified signature, to now an access-restricted API, which is a sensitive API. So now there's no difference between a sensitive and a non-sensitive API. And going back to the board's construction, there is a sensitive and non-sensitive API to have those specific meanings. Okay. Your time's up, counsel, unless the other judges have questions. No. None for me. Okay. Well, thanks. Ms. Makuda? Yes, Your Honor. First, I wanted to get it back with the more pinpointed sites to Blackbeard's expert, Dr. Ligler's declaration. And this is with respect to the LEND teaching on the verification of a developer's signature. So, Your Honor, if I could direct your attention to Appendix 6515. At the bottom of that page, second-to-last sentence says, while LEND teaches that developer signature 312 may be verified, LEND does not teach that loading the JAR files code for execution is based upon such verification. So, the entire limitation requires that the verification is what allows access to the sensitive APIs. And that element's teaching is missing from LEND. So, that was Blackberry's expert's conclusion based on reviewing all the disclosure of LEND. Does that answer your question, Your Honor? Yes, it can. Okay. That answers it. Thank you. And I had previously answered your question regarding the impact of you affirming signed software application conditions for reconstruction for Claims 1 and 76 for the 1619 proceeding and whether that has overlap with doing so for the same two claims in the 1620. And I believe I had stated on the record that it's true for those two claims. It would not be true for all of the claims on the TO. So, there would still be additional claims that need to be resolved, even if you affirm that construction. So, there are two dependent claims and it's specifically claims 77, 79, 80, 82, 86, and 112. So, I would like to detangle that for you. But as you can tell, there are many overlapping issues here. But it's not a perfect overlap among the claims. And Your Honor, unless you have any additional questions for me, I'm happy to rely on the submissions for the remaining issues. Anyone? Okay, Ms. Fukuda. Thank you. Thank you, Your Honor.